UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>v.<br><br>KARL KUHN, in his official capacity as head coach of the baseball team at Radford University, and<br><br>ROBERT LINEBURG, in his official capacity as athletics director at Radford University<br><br>    Defendants. | Case No. 7:23cv00209 |

## COMPLAINT

1. Plaintiff, John Doe, brings this action under the First and Fourteenth Amendments to the U.S. Constitution, *see* 42 U.S.C. § 1983, and alleges:

### Introduction

2. Doe lost a year of eligibility after his baseball coach, Karl Kuhn, intentionally inserted him into a game at the close of the season – in doing so, burning his redshirt – as retaliation for leading a group of players to complain about his season-long verbal abuse, indifference to players' mental and physical health, and racial animus, of Doe and his teammates.

3. Doe and others had met in confidence with Robert Lineburg and others in the athletic department to ask for an investigation of Kuhn. Rather than act on the players' concerns, officials leaked the complaint to Kuhn, who then intentionally played Doe as retribution. Days later, Kuhn cut Doe from the team, revoking his scholarship.

4. Kuhn is a state actor, *Jennings v. Univ. of N.C.*, 482 F.3d 686, 701 (4th Cir. 2007)

(en banc), and Doe's complaints to the university were protected by the First Amendment, *W.V. State Bd. Of Educ. V. Barnette*, 319 U.S. 624, 634 (1943). The Constitution gives college students like Doe "the right to be free from [such] retaliation" for their protected expression. *Constantine v. Rectors & Visitors of George Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (quoting *Suarez Corp. Indus. V. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).

5. As a result of Kuhn's and Lineburg's actions, Doe lost one year of NCAA eligibility and his athletic scholarship. This Court should vindicate Doe's constitutional rights and award him legal and equitable relief.

## Parties

6. Doe is a United States citizen living in Westmoreland County, Virginia. Doe was a freshman student on the baseball team at Radford university during the 2020-2021 season.

7. Karl Kuhn is a United States citizen living in Charleston, South Carolina. Mr. Kuhn served as the head baseball coach at Radford University during the 2020-2021 season.

8. Robert Lineburg is a United States citizen living in Radford, Virginia. Mr. Lineburg served as the director of athletics at Radford University during the 2020-2021 season.

9. Radford University is an institution of higher education located in the city of Radford, Virginia, and is part of the statewide system of public higher education operated by the Commonwealth of Virginia.

10. At all times pertinent herein, Kuhn and Lineburg were action in their official capacities as employees of Radford University.

**Jurisdiction**

11.     This action arises under the First and Fourteenth Amendments to the U.S. Constitution and is brought via 42 U.S.C. §§ 1983 and 1988.

12.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

13.     Venue is proper under 28 U.S.C. § 1391 because the events giving rise to the claims occurred in this district and because the sole defendant resides here.

**Facts**

14.     At all times pertinent to this action, Kuhn was employed as the baseball coach at Radford University.

15.     At all times pertinent to this action, Kuhn acted in the scope of his employment as the baseball coach at Radford University.

16.     At all times pertinent to this action, Radford University was made aware of and subsequently ratified the conduct of Kuhn.

17.     Joe Raccuia, the former baseball coach at Radford University, recruited Doe to play baseball at Radford University.

18.     Raccuia offered Doe an athletic scholarship to pay 50% of his tuition at Radford University in exchange for joining the baseball team.

19.     Doe, a highly sought recruit, accepted Raccuia's offer and signed a letter of intent to join Radford University upon his graduation from high school in 2020.

20.     In August 2019, after Doe accepted the offer, Raccuia resigned.

21.     In August 2019, Radford University hired Kuhn as the replacement baseball coach.

22.     In June 2020, Doe honored his commitment and enrolled at Radford University.

23.     Upon arriving on campus, Doe was disturbed by Kuhn's behavior.

24. Kuhn assigned lockers for the baseball players.

25. The lockers assigned to minority players were grouped together.

26. Doe is African-American.

27. Doe's locker was assigned next to four other black or biracial players.

28. It was evident Kuhn had group the minority players together in the locker room.

29. On June 3, 2020, Kuhn held a Zoom call for the players announcing that in light of the ongoing national protests regarding racial discrimination, that all players would be expected to stand for the National Anthem in order to remain in good standing on the team.

30. In August 2020, Kuhn told the minority players, including Doe, they would need to get their hair cut prior to team pictures. None of the white players were told to get haircuts.

31. Doe had been growing out his hair for many years as a form of empowerment and self-esteem. He cut his hair on August 13, 2020.

32. On September 19, 2020, Kuhn told the players that they were not allowed to attend a racial justice rally, the Bigger Picture March, that had been organized on campus.

33. Kuhn told Doe and others that they could not attend due to "safety" concerns.

34. Thousands of Radford students – including other sports teams – attended the rally.

35. Doe later learned that Kuhn referred to an Asian American baseball player on the team as "Kim Chi" as a moniker regarding his ethnicity. The player's name was not Kim Chi.

36. During the fall season, Kuhn was obligated to help each of the baseball players find placement on summer league teams.

37. Kuhn assisted white players find placement. But, he declined to assist Doe.

38. Then, during the 2020-2021 season, Kuhn declined to play Doe in any games.

39. Doe began to feel isolated and anxious as a result of Kuhn's conduct.

40. Doe began to suffer from extreme depression.

41. In February 2021, Doe told an assistant coach he was suffering from depression.

42. The assistant coach told Doe to report his mental health issues to Kuhn.

43. That month, Doe approached Kuhn in the batting practice facility.

44. Kuhn told Doe that he needed to get off medication – which Doe was taking for his acne. A common side effect is severe depression. Doe said he believed the prescribed medication help, to which Kuhn remarked, "If you feel like cutting your head off with a pair of scissors, let me know."

45. Disturbed by the conversation with Kuhn, Doe contacted A.M., an employee in the Radford University Athletics Department, to report the incidents.

46. A.M. said she would speak with a counsel at the university to investigate and take action. She said she would have to report it to the University due to the severity of the statement.

47. Days later, Kuhn called Doe into his office to begin grilling him about whether he had made a complaint to the university.

48. On February 19, 2021, in the middle of a game, Kuhn told Doe, "Do you see why I am a dick to you?"

49. On February 23 and 26, 2021, Doe's parents contacted A.M. to ask if the athletics trainer could assist with Doe's mental health issues.

50. On March 2, 2021, Doe's parents contacted Kuhn to request a phone conference.

51. On March 3, 2021, Doe's parents and Kuhn spoke by phone. Kuhn said Doe's parents should just come get him and disenroll him from Radford University. Kuhn said, "If you put a gun to my head, you would not like the answer," stating that Doe – who is 5'6" – was too short to play major league baseball anyways. Kuhn said Doe would never be happy on his team

5

because he will never get playing time.

52. On March 11, 2021, Doe's parents requested a meeting with the Athletics Director of Radford University to discuss their son's experience with Kuhn.

53. On March 12, 2021, during a game against High Point University, Kuhn screamed at the catcher within earshot of Doe and the other players, "These parents want me fired."

54. On March 16, 2021, Kuhn removed players from the dugout and took them to the tunnel out of sight of AD staff to curse them out.

55. On March 20, 2021, Doe – who had yet to play a single inning all season – asked Kuhn if he could be in the lineup. Kuhn said, "You're not on the active roster." Yet, Doe had been attending all practices and team meetings, and he was not injured. There was no basis to suggest he was not an active member of the team.

56. On March 22, 2021, Doe and his parents met with the AD, Assistant AD, and NCAA Compliance Officer of Radford University, to discuss the concerns regarding Kuhn's treatment of the players, their mental health, and racially motivated comments. The AD assured Doe and his parents that there would be no retaliation for raising their concerns.

57. On March 24, 2021, Doe asked an assistant coach why he was not permitted to get live at-bat practice. The coach said it was because of CARA (countable athletically related activities) under NCAA rules – even though Doe had participated in all other activities.

58. On March 26-27, 2021, Kuhn refused to allow Doe to travel with the team. He was the only non-injured player excluded from traveling.

59. On April 7, 2021, an assistant AD from Radford University offered to meet with Doe and Kuhn to discuss allowing Doe to "red-shirt" – since he had not played – in order to preserve a year of eligibility.

60. On April 18, 2021, team trainer J.S. messaged Doe to say, "This gives you the info…counselors…all confidential," listing facilities available for mental health counseling.

61. On April 21, 2021, a group of 13 players from the Radford University baseball team – including Doe – all met with the assistant Lineburg and an NCAA Compliance Officer at Radford to share issues related to mental health, mental and emotional abuse, and racial bigotry of Kuhn.

62. The meeting was supposed to be held in confidence.

63. Upon information and belief, the Radford University employees did not keep the meeting in confidence and spoke with Kuhn about the complaints that were raised.

64. On April 23, 2021, Lineburg and a subordinate told the 13 players that no action would be taken, Kuhn would not be investigated by the university, and they were going to support Kuhn to continue without any involvement from the school to remedy his conduct.

65. That same day, on April 23, 2021, during a game, Kuhn came to the mound to meet with the players on the field and said, "You thought you were going to get me fired, but I'm not going anywhere," and retreated to the dugout.

66. Then, Kuhn ordered Doe to take the field and play the remaining six innings.

67. When Kuhn ordered Doe to take the field, he knew that by doing so, it would cause Doe to lose an entire year of college eligibility – costing him a year's scholarship – to play six innings, because he could no longer request a redshirt. Playing Doe cost him a year of eligibility.

68. Days later, Kuhn cut Doe from the baseball team.

69. By cutting Doe, he lost his scholarship.

70. Kuhn also cut another African American player on the team.

71. Doe was forced to withdraw from the university if he wanted to continue to pursue his baseball career.

72. Doe transferred to a different college.

73. Doe was unable to secure a scholarship at his new college to match the funds that he had earned at Radford University, losing approximately $100,000, that he must pay to complete his education elsewhere.

74. Neither Lineburg nor others in the athletics department never reported Doe's complaints regarding Kuhn's racism, mental abuse, verbal abuse, or disability discrimination, to the Radford University Office of Institutional Equity, even though all university employees were required as mandatory reporters to forward such complaints to protect student well-being.

75. The Radford University Office of Institutional Equity states that its mission is to ensure all students are free to learn in "an educational and work environment free from any discrimination on the basis of race, color, religion, national origin, sex, disability, age, sexual orientation, gender identity, pregnancy status, and veteran status."

76. Doe suffered retaliation at the hands of Kuhn.

77. Lineburg ignored Doe's complaints and failed to investigate or act.

78. Kuhn retaliated against Doe when Doe sought help from the University to intervene and uphold the policies it promised to promote in its mission, when Kuhn intentionally played Doe during the last game of the season, thereby destroy a year of eligibility.

79. Doe now seeks legal redress in the form of compensatory damages for the lost year of eligibility, diminished scholarship, along with injunctive relief to restore his eligibility.

## CLAIM ONE – FIRST AMENDMENT / SECTION 1983

80. Doe repeats and realleges paragraphs 1-79 as if set forth herein.

81. The First Amendment, as incorporated against the States by the Fourteenth Amendment, protects the freedoms of speech and association. *Tashjian v. Republican Party of*

*Conn.*, 479 U.S. 208, 214 (1986). These protections do not "apply with less force" to college students. *Healy v. James*, 408 U.S. 169, 180 (1972). To the contrary, "[t]he vigilant protection of constitutional freedoms is nowhere more vital." *Id.* College students "must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise our civilization will stagnate and die." *Sweezy v. N.H. ex. Rel. Wyman*, 354 U.S. 234, 250 (1957).

82. Because state actions cannot "produce a result which [they] could not command directly," *Perry v. Sindermann*, 408 U.S. 593, 597 (1972), the First Amendment also prohibits "retaliation" against students who exercise their rights. *Constantine*, 411 F.3d at 499. Put simply, "[o]fficial reprisal for protected speech offends the Constitution." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). This ban on retaliation applies even if the person "has no 'right' to [the] governmental benefit" and even if the government can "deny him the benefit for any number of reasons." *Perry*, 408 U.S. at 597. What the state action did is irrelevant; 'the government's *reason* for [acting] is what counts." *Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1418 (2018) (emphasis added). The illegal retaliation can be something "as trivial as failing to hold a birthday party." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 78 n.8 (1990).

83. Doe's complaint to Radford University officials in the athletics department about Kuhn's conduct was protected by the First Amendment.

84. Kuhn retaliated against Doe for exercising his First Amendment rights by intentionally inserting him into a game in order to cause him to burn his redshirt and lose a year of NCAA eligibility, then days later cutting him from the team.

85. Lineburg retaliated against Doe by ratifying Kuhn's conduct, refusing to investigate Kuhn, refusing to act on Doe's complaints, and allowing Doe's complaints – purportedly made in confidence – to be leaked to Kuhn, such that Kuhn could seek retribution.

86. Kuhn and Lineburg took these actions against Doe under color of state law. *See Jennings*, 482 F.3d at 701 (soccer coach "functioning in his capacity as a coach" is "a state action" under Section 1983).

87. Kuhn and Lineburg intentionally violated the Constitution and acted with reckless and callous disregard of Doe's rights.

## PRAYER FOR RELIEF

88. Doe respectfully asks this Court to enter judgment in his favor and to provide the following relief:

   a. A declaratory judgment that Kuhn and Lineburg violated Doe's First and Fourteenth Amendment rights;

   b. A permanent injunction ordering Kuhn and Lineburg to undergo First Amendment training, to cooperate with Doe in his petition to the NCAA to reinstate his year of eligibility, and to take no adverse action against Doe based on any exercise of his First Amendment rights;

   c. Compensatory damages;

   d. Punitive damages;

   e. Nominal damages;

   f. Doe's reasonable costs and expenses of this action, including attorneys' fees, per 42 U.S.C. § 1988 and all other applicable laws; and

   g. All other relief Doe is entitled to.

Plaintiff requests a jury trial.

Dated: April 11, 2023

Respectfully Submitted,

**JOHN DOE**

By: _____
Of Counsel

Robert E. Dean, Esq. (VSB No. 80288)
Benjamin F. Sharpe, Esq. (VSB No. 90170)
ROB DEAN LAW
401 Campbell Ave., Ste. 302
Roanoke, Virginia 24016
Phone:  (540) 585-1776
Fax:       (540) 301-0833
Email:    rob@robdeanlaw.com

*Counsel for Plaintiff*