IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | Case No. 7:23-cv-209 |
| ) | |
| v. ) | By:   Michael F. Urbanski |
| ) | Chief United States District Judge |
| KARL KUHN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This issue before the court is whether plaintiff John Doe may proceed under a pseudonym. For the reasons stated below, Doe's motion to proceed under a pseudonym, ECF No. 2, is **DENIED**, and Doe is **GRANTED LEAVE** to amend his complaint to include his full name within thirty (30) days. Defendant Karl Kuhn's motion to dismiss for failure to comply with Federal Rule of Civil Procedure 10(a), ECF No. 6, is **TAKEN UNDER ADVISEMENT** pending Doe's submission of amended complaint.

### I. Background

Per the Complaint, John Doe was recruited to play baseball for Radford University ("Radford") by Radford's former baseball coach, Joe Raccuia, who was replaced by Kuhn prior to Doe's matriculation. Compl., ECF No. 1, at ¶ 17–21. Doe found many of Kuhn's actions objectionable, such as: grouping the lockers of minority players, such as Doe, together; informing all players that they were required to stand during the national anthem in order to remain in good standing; directing only the players of color to get haircuts prior to team pictures; prohibiting players from attending a racial justice rally on campus; referring to an

1

Asian American player on the team as "Kim Chi," rather than by his name; and assisting white players in finding summer league placements, but not assisting Doe. Id. at ¶¶ 23–37. Kuhn did not play Doe in any baseball games during the 2020–2021 season. Id. at ¶ 38.

Doe was directed to inform Kuhn of his ongoing mental health concerns and believed Kuhn responded inappropriately to his disclosure. Id. at ¶¶ 40–44. Doe then reported this and the previous incidents to Radford's athletic department. Id. at ¶ 45–46. Kuhn subsequently asked Doe whether Doe had lodged a complaint against him. Id. at ¶ 47. When Doe's parents became involved, Kuhn urged them to disenroll Doe from Radford and stated, in front of others, that "these parents want me fired." Id. at ¶¶ 49–53. Several days later, Kuhn took the players out of earshot of other athletic staff members to "curse them out." Id. at ¶ 54.

Despite assurance from Radford's athletic director that Doe would not face retaliation for raising concerns about Kuhn, id. at ¶ 56, Doe was taken off the active lineup, prohibited from participating in live at-back practice, and prevented from traveling with the team, id. at ¶¶ 57–58.

During this period, Doe had discussions with Kuhn and an assistant Athletic Director about preserving a year of playing eligibility by "red-shirting" since Doe had not yet played in a game. Id. at ¶ 59.

Doe and a dozen other baseball players met with an assistant Athletic Director at Radford to discuss Kuhn under the belief that the meeting was confidential. Id. at ¶ 61–62. However, Doe believes the substance of the meeting was shared with Kuhn shortly thereafter. Id. at ¶¶ 62–63. On the very day Radford informed Doe and his peers that the university would neither investigate nor take action against Kuhn, Kuhn told the players: "You thought you

2

were going to get me fired, but I'm not going anywhere." Id. at ¶ 65. Kuhn then ordered Doe into the game, causing Doe to lose his opportunity to red-shirt. Id. at ¶ 67. Within days, Kuhn cut Doe and another African American member of the team, causing Doe to lose his scholarship and forcing Doe to withdraw from Radford if he hoped to continue playing baseball. Id. at ¶¶ 68–71. Doe transferred to another college, but did not secure the same scholarship amount, increasing his net cost of university attendance by approximately $100,000. Id. at ¶ 73.

## II. Legal Standard

Generally, the names of parties to a case must be disclosed. See Fed. R. Civ. P. 10(a). There is a long-standing presumption of openness in judicial proceedings, which enjoys constitutional support through various First Amendment protections. See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 576 (1980). However, there are rare circumstances in which "compelling concerns relating to personal privacy or confidentiality may warrant some degree of anonymity in judicial proceedings, including use of a pseudonym." Doe v. Public Citizen, 749 F.3d 246, 273 (4th Cir. 2014).

Because proceeding under a pseudonym cuts against the public's right of access to judicial proceedings, id., "'a district court has an independent obligation to ensure that extraordinary circumstances support a request [to litigate under a pseudonym] by balancing the party's stated interest in anonymity against the public's interest in openness and prejudice that anonymity would pose to the opposing party.'" Doe v. The Rector & Visitors of George Mason Univ., 179 F. Supp. 3d 583, 592 (E.D. Va. 2016) ("GMU") (quoting Public Citizen, 749 F.3d at 274).

3

To determine whether a plaintiff may proceed under a pseudonym, the court must consider the following five factors:

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

James v. Jacobson, 6 F.3d 233, 238 (4th Cir. 1993). Each factor may not be relevant in every case. Doe v. Alger, 317 F.R.D. 37, 39 (W.D. Va. 2016). "At bottom, then, the trial court must 'carefully review all the circumstances of [the] case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns.'" Id. at 39–40 (quoting Doe v. Pittsylvania Cnty., 844 F. Supp. 2d 724, 729 (W.D. Va. 2012)).

### III. Analysis

Weighing the five James factors, the court concludes that Doe may not proceed under a pseudonym. 6 F.3d at 238.

#### A. Specific Sensitive and Personal Interest

Doe argues that the first James factor is met, as he seeks to "preserve privacy [of] a sensitive and high personal nature: his academic records, which are subject to federal law regarding their confidentiality, and his medical condition." ECF No. 2, at 2. The court disagrees.

"Cases involving mental health issues routinely proceed without concealing the identity of the Plaintiff." Roe v. CVS Caremark Corp., No. 4:13-CV-3481-RBH, 2014 WL 12608588,

4

at *2 (D.S.C. Sept. 11, 2014). To warrant anonymity, the mental health concern must be particularly exceptional and stigmatizing. Smith v. Towson Univ., No. CV JRR-22-2998, 2022 WL 18142844, at *2 (D. Md. Nov. 30, 2022), aff'd, No. 22-2319, 2023 WL 3053034 (4th Cir. Apr. 24, 2023) (collecting cases in which courts denied requests to proceed pseudonymously involving obsessive-compulsive disorder, post-traumatic stress disorder, and other conditions). Cases allowing anonymity to protect mental health and academic records often involve allegations of sexual misconduct, a factor that is absent here. See, e.g., Doe v. The Rector & Visitors of George Mason Univ., 179 F. Supp. 3d 583, 594 (E.D. Va. 2016).

### B. Retaliatory Physical or Mental Harm

Doe further states that identifying him "risks retaliation from Defendants and others for pursuing vindication of his Constitutional rights." ECF No. 2, at 2. While Doe alleges that Kuhn retaliated against him for lodging complaints about Kuhn's conduct as coach, the two have had no contact since departing Radford and now live several states away from one another. At the hearing on June 27, 2023, Doe voiced concern about potential retaliation in the form of lost playing opportunities from the insular collegiate baseball community.

The risk of retaliation here is insufficient to warrant proceeding via pseudonym. Fear of humiliation and embarrassment or the threat of economic harm, especially when unsubstantiated, are not a sufficient reason to grant a motion to proceed pseudonymously. See Doe v. Frank, 951 F.2d 320, 324 (11th Cir. 1992); Doe v. Pittsylvania Cnty., Va., 844 F. Supp. 2d 724, 732–33 (W.D. Va. 2012) (declining to grant anonymity where fears of retaliation were unsubstantiated); Qualls v. Rumsfeld, 228 F.R.D. 8, 12 (D.D.C. 2005); Yacovelli v. Moeser, No. 1:02cv596, 2004 WL 1144183, at *7 (M.D.N.C. May 20, 2004) ("[E]mbarrassment and

5

harassment are generally insufficient to demonstrate retaliatory harm."); Doe v. Shakur, 164 F.R.D. 359, 362 (S.D.N.Y. 1996).

### C. Ages

The third factor—the ages of the persons whose privacy interests are to be protected—weighs against use of a pseudonym. Although Doe was young, all parties were legal adults during the relevant time period.

### D. Action Against Government

With regard to the fourth factor, Doe notes that the action is against state actors in their capacity as government employees. ECF No. 2, at 2. "Courts are more likely to allow a plaintiff to proceed under a pseudonym when the plaintiff challenges the government or government activity." Doe v. Virginia Polytechnic Inst. & State Univ., No. 7:19-CV-00249, 2020 WL 1287960, at *4 (W.D. Va. Mar. 18, 2020). "This is because 'although the mere filing of a lawsuit against a private party may cause the defendant reputational and economic harm, such that fairness requires the identification of the plaintiffs, the government is not vulnerable to similar reputational harm . . . .'" Id. (quoting Int'l Refugee Assistance Project v. Trump, No. TDC-17-0361, 2017 WL 818255, at *3 (D. Md. Mar. 1, 2017)); c.f. Doe v. Pub. Citizen, 749 F.3d 246, 274 (4th Cir. 2014) (noting that "the public's interest in open judicial proceedings" "is especially compelling given that Company Doe sued a federal agency"). This rationale is strongest "in a case involving a challenge to the constitutional, statutory, or regulatory validity of government activity." Id. In Doe v. Alger, 317 F.R.D. 37, 41 (W.D. Va. 2016), the court found that this factor was neutral, as a suit against a university's president and vice president

would not be understood as accusing them, individually, of misconduct, but rather as named "only because they have the authority" to provide the relief sought.

Here, by contrast, the action is against an individual in his capacity as a state actor, not against a faceless government agency. Doe specifically accuses Kuhn of misconduct and wrongdoing. As Kuhn is vulnerable to reputational and economic harm, this factor weighs against Doe's request.

### E. Risk of Unfairness to Defendant

Finally, Doe argues that "[t]he risks to [Kuhn] are minimal, as [Kuhn is] already aware of [ ] Doe's identity." ECF No. 2, at 2; see Smith v. Towson Univ., No. CV JRR-22-2998, 2022 WL 18142844, at *3 (D. Md. Nov. 30, 2022), aff'd, No. 22-2319, 2023 WL 3053034 (4th Cir. Apr. 24, 2023) (holding that the use of a pseudonym was not unfair "because defendant is fully aware of plaintiff's identity").

Kuhn retorts that it is "grossl[]y unfair that Plaintiff can level allegations" of this type against him because, if the case continues, "there will be a record of the allegations against [Kuhn] while the Plaintiff walks away anonymously." ECF No. 7, at 3. The court finds Kuhn's concerns persuasive. In Doe v. N. Carolina Cent. Univ., No. 1:98CV01095, 1999 WL 1939248, at *4 (M.D.N.C. Apr. 15, 1999), permitting the plaintiff to proceed under a pseudonym would have forced the defendant to "defend itself publicly while plaintiff could use her privacy interests as a shelter from which she can safely hurl these accusations without subjecting herself to public scrutiny." (cleaned up) (internal quotations omitted)). Furthermore, in Candidate No. 452207 v. CFA Inst., 42 F. Supp. 3d 804, 810 (E.D. Va. 2012), the court held that "permitting Plaintiff to assert his claims against" the defendant "without having to

7

disclose his name would invite meritless lawsuits from other" similarly situated plaintiffs, "offering them a forum to tarnish the reputation of the [defendant] without risk of harm to their own reputation." There is an inherent inequality in allowing an accuser to proceed pseudonymously while the defendant is forced to defend himself publicly. Therefore, this fifth factor weighs against granting Doe's request.

## IV. Conclusion

On balance, the James factors weigh against permitting Doe to proceed under a pseudonym. 6 F.3d at 238. Therefore, Doe's motion to proceed under a pseudonym, ECF No. 2, is **DENIED,** and Doe is **GRANTED LEAVE** to amend his complaint to include his full name within thirty (30) days. Kuhn's motion to dismiss for failure to comply with Federal Rule of Civil Procedure 10(a), ECF No. 6, is **TAKEN UNDER ADVISEMENT** pending Doe's submission of amended complaint.

It is **SO ORDERED**.

Entered: July 20, 2023

Michael F. Urbanski
Chief United States District Judge