IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **JORDAN PEYTON,** | ) |
| | ) |
| Plaintiff, | ) Case No. 7:23-cv-209 |
| | ) |
| v. | ) By:   Michael F. Urbanski |
| | ) Chief United States District Judge |
| **KARL KUHN,** | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This matter comes before the court on defendant Karl Kuhn's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 18. Plaintiff Jordan Peyton—a former baseball player on the college team coached by Kuhn—asserts a claim against Kuhn for First Amendment retaliation in violation of 42 U.S.C. § 1983. Am. Compl., ECF No. 17.

For the foregoing reasons, Kuhn's Motion to Dismiss, ECF No. 18, is **DENIED**.

**I. Background**

Per the Amended Complaint, Peyton was recruited to play baseball for Radford University ("Radford") by Radford's former baseball coach, Joe Raccuia, who was replaced by Kuhn prior to Peyton's matriculation. Am. Compl., ECF No. 17, at ¶ 17–21. Peyton found many of Kuhn's actions objectionable, such as: grouping the lockers of minority players, such as Peyton, together; informing all players that they were required to stand during the national anthem in order to remain in good standing; directing only the players of color to get haircuts prior to team pictures; prohibiting players from attending a racial justice rally on campus; referring to an Asian American player on the team as "Kim Chi," rather than by his name; and

1

assisting white players in finding summer league placements, but not assisting Peyton. Id. at ¶¶ 23–37. Kuhn did not play Peyton in any baseball games during the 2020–2021 season. Id. at ¶ 38.

Peyton was directed to inform Kuhn of his ongoing mental health concerns and believed Kuhn responded inappropriately to his disclosure. Id. at ¶¶ 40–44. Peyton then reported this and the previous incidents to Radford's athletic department. Id. at ¶ 45–46. Kuhn subsequently asked Peyton whether Peyton had lodged a complaint against him. Id. at ¶ 47. When Peyton's parents became involved, Kuhn urged them to disenroll Peyton from Radford and stated, in front of others, that "these parents want me fired." Id. at ¶¶ 49–53. Several days later, Kuhn took the players out of earshot of other athletic staff members to "curse them out." Id. at ¶ 54.

Despite assurance from Radford's athletic director that Peyton would not face retaliation for raising concerns about Kuhn, id. at ¶ 56, Peyton was taken off the active lineup, prohibited from participating in live batting practice, and prevented from traveling with the team, id. at ¶¶ 57–58.

During this period, Peyton had discussions with Kuhn and an assistant Athletic Director about preserving a year of playing eligibility by "red-shirting" since Peyton had not yet played in a game. Id. at ¶ 59.

On April 21, 2021, Peyton and a dozen other baseball players met with an assistant Athletic Director at Radford to discuss Kuhn under the belief that the meeting was confidential. Id. at ¶ 61–62. However, Peyton believes the substance of the meeting was shared with Kuhn shortly thereafter. Id. at ¶¶ 62–63. On the very day Radford's athletic director,

2

Robert Lineburg, informed Peyton and his peers that the university would neither investigate nor take action against Kuhn, Kuhn met with players on the mound during a game and said: "You thought you were going to get me fired, but I'm not going anywhere." Id. at ¶ 65. Kuhn then ordered Peyton into the game, causing Peyton to lose his opportunity to red-shirt. Id. at ¶ 67. Within days, Kuhn cut Peyton and another African American member of the team, causing Peyton to lose his scholarship and forcing Peyton to withdraw from Radford if he hoped to continue playing baseball. Id. at ¶¶ 68–71. Peyton transferred to another college, but did not secure the same scholarship amount, increasing his net cost of university attendance by approximately $100,000. Id. at ¶ 73.

## II. Law

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is plausible if the complaint "pleads factual content that allows the court to draw the reasonable inference that the

3

defendant is liable for the misconduct alleged." Id. Moreover, "[t]he purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; 'importantly, [the motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" Beacon Wireless Solutions, Inc. v. Garmin Intern., Inc., No. 5:11-cv-00025, 2011 WL 4737404, at *7 (W.D. Va. Oct. 5, 2011) (quoting McBurney v. Cucinnelli, 616 F.3d 393, 408 (4th Cir. 2010) (Agee, J., concurring in part and dissenting in part)) (second alteration in original). "Thus, the proper inquiry is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support its claims." Id. (internal quotation marks and alteration omitted).

### III. Analysis

"As a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." Nieves v. Bartlett, ––– U.S. –––––, 139 S. Ct. 1715, 1722 (2019) (cleaned up). To state a First Amendment retaliation claim against Kuhn, Peyton's complaint must allege facts supporting a reasonable inference that: (1) Peyton "engaged in protected First Amendment activity"; (2) Kuhn "took some action that adversely affected [Peyton's] First Amendment rights"; and (3) "there was a causal relationship between [Peyton's] protected activity and [Kuhn's] conduct." Buxton v. Kurtinitis, 862 F.3d 423, 427 (4th Cir. 2017) (quotation marks omitted). Kuhn contends that Peyton has failed to meet the second and third prongs of this test. Mem. Supp. Mot. Dismiss, ECF No. 19, at 9–12. The court disagrees.

### A. Adverse Action

Peyton has alleged facts sufficient to support a reasonable inference that Kuhn's actions adversely affected Peyton's first amendment rights. To make this determination,

> [W]e ask, from an objective standpoint, whether the challenged conduct would "likely deter a person of ordinary firmness from the exercise of First Amendment rights." Constantine, 411 F.3d at 500 (internal quotation marks and citation omitted). And we require that the challenged conduct generate more than a de minimis inconvenience. We conduct this inquiry on a case-by-case basis, considering the actors involved and their relationship.

Snoeyenbos v. Curtis, 60 F.4th 723, 731 (4th Cir. 2023). Kuhn argues that Peyton's claim that Kuhn played him in the last baseball game of the season—thereby causing Peyton to lose his ability to red-shirt and a year of eligibility—is not a sufficient adverse action. Mem. Supp. Mot. Dismiss, ECF No. 19, at 9–10. Even if this is true, Peyton also alleges that Kuhn cut him from the team and caused him to lose his scholarship. Am. Compl., ECF No. 17, at ¶¶ 68–69, 84.

In Hening v. Adair, 644 F. Supp. 3d 203, 206 (W.D. Va. 2022), a member of the Virginia Tech soccer team refused to kneel during the reading of a unity statement before a game. The court found that subsequent actions by the coach, including "publicly chastising her, removing her from the starting lineup, and reducing her playing time[,]" "would tend to chill a person of ordinary firmness's exercise of her First Amendment rights." Id. at 209. The court noted that this "type of retaliatory conduct . . . would certainly have an effect on college athletes generally, especially those who rely on scholarships to offset (or cover) their academic expenses." Id. at 209 n.3.

Eliminating Peyton's ability to play for Radford by cutting him from the team is a more severe adverse action than the deeds in Hening. Viewing the facts in the light most favorable

5

to Peyton—as the court is required to do at this stage—Peyton has alleged facts sufficient to meet the adverse action prong.

## B. Causal Relationship

Kuhn also objects to the but-for causation prong. This element is difficult to satisfy. Porter v. Bd. of Trs. of N.C. State Univ., 72 F.4th 573, 583 (4th Cir. 2023). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." Nieves, 139 S. Ct. at 1722. "Specifically, it must be a but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." Id. "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." Id. (quotation marks omitted) (emphasis added).

Kuhn argues that the amended complaint does not establish but-for causation, as it does not plead that Kuhn was aware of the April 21, 2021, meeting or that Peyton was one of the meeting's participants. Mem. Supp. Mot. Dismiss, ECF No. 19, at 11. This argument fails for at least two reasons. Not only do the facts alleged permit the reasonable inference that Kuhn was aware of that meeting, but the Amended Complaint also alleges a series of complaints by Peyton followed by negative effects. Each time Peyton lodged a complaint with Radford, he was questioned by Kuhn or singled out for apparently punitive action. In early 2021, Peyton expressed his concerns to a member of the Radford athletics department. Am. Compl., ECF No. 17, at ¶ 45. Within days, "Kuhn called Peyton into his office to begin grilling him about whether he had made a complaint to the university." Id. at ¶ 47. On March 22,

2021, Peyton and his parents met with staff in the athletic department to discuss their concerns about Kuhn. Id. at ¶ 56. Four days later, Kuhn refused to permit Peyton to travel with the team—the only non-injured team member subject to such a prohibition. Id. at ¶ 58. During a game on April 23, 2021—two days after the meeting with Radford staff and a NCAA Compliance Officer—Kuhn "came to the mound to meet with the players on the field and said, 'You thought you were going to get me fired, but I'm not going anywhere,' and retreated to the dugout," Am. Compl., ECF no. 17, at ¶ 65, shortly before ordering Peyton into the game and a few days before cutting him from the team.

Taken together, the cadence and temporal proximity of these events suggests—at least for the motion to dismiss stage—that Peyton's multiple complaints about Kuhn caused Kuhn to cut him from the team. See Penley v. McDowell Cnty. Bd. of Educ., 876 F.3d 646, 656 (4th Cir. 2017) ("In retaliation cases, a causal connection may exist where the employer takes adverse employment action against an employee shortly after learning of the protected activity."); Flanagan v. Scearce, No. 7:19-CV-00413, 2021 WL 4312555, at *8 (W.D. Va. Sept. 22, 2021) ("The court finds, however, that the temporal proximity of Flanagan's speech on August 15, 2018, and her termination on August 30, 2018, is sufficient to create a genuine issue of material fact as to whether Flanagan's speech was the but-for cause of her termination.")

## IV. Conclusion

For the aforementioned reasons, Kuhn's Motion to Dismiss, ECF No. 18, is **DENIED**.

It is **SO ORDERED**.

Entered: December 1, 2023

Michael F. Urbanski
Chief United States District Judge

8